# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAYCO SAUNDERS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 16-1062 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| GFS ENTERTAINMENT GROUP, LLC, | ) | Magistrate Judge Cynthia Reed Eddy |
| *et al.*, | ) | |
| Defendants. | ) | |

## **MEMORANDUM ORDER**

Plaintiff Rayco Saunders, proceeding *pro se* and granted leave to proceed *in forma pauperis* ("IFP"), initiated this action stating a number of claims against public and private Defendants for failure to pay Plaintiff, a professional boxer, the amount specified in a bout contract between Plaintiff and Defendant GFS Entertainment Group, LLC ("GFS"), a boxing promoter licensed in the District of Columbia ("DC"). The additional Defendants are: the DC Boxing and Wrestling Commission ("DCBWC"); Sheldon J. Brown, Commission Administrator for the DCBWC;[1] Darryl Robinson, President of GFS; James Smith, GFS Promoter; and the Department of Consumer and Regulatory Affairs in DC ("DCRA"). This case was referred to United States Magistrate Judge Cynthia Reed Eddy for pretrial proceedings in accordance with

---

[1] The caption of Plaintiff's Amended Complaint refers to Sheldon J. Brown as "Dept. Commissioner," however, an official government website states his title as "Commission Administrator." DC Boxing and Wrestling Commission, https://www.open-dc.gov/meeting/dc-boxing-and-wrestling-commission-16 (last visited Nov. 8, 2017). In addition, Plaintiff describes Defendant Brown as "Commission Administrator" in the body of his Amended Complaint at ¶ 10 (Doc. 3).

the Magistrates Act, 28 U.S.C. §§ 636(b)(l)(A) and (B), and Rules 72.C, 72.D and 72.G of the Local Rules for Magistrates.

On August 22, 2017, the Magistrate Judge issued a Report and Recommendation (Doc. 29) (the "Report"). The Report recommended that the Court lacks subject matter jurisdiction over this action and that several of Plaintiff's claims be dismissed with prejudice *sua sponte* by virtue of the Court's obligation to review the sufficiency of IFP claims under 28 U.S.C. § 1915(e)(2). Plaintiff timely filed Objections to the Report (Doc. 30).

After a *de novo* review of the record, the Court adopts the Report in part and rejects the Report in part. Specifically, the Court adopts Sections II.a ("Backgound"), II.b ("Standard of Review"), II.c.iv ("Breach of Contract") and II.c.vii ("Unjust Enrichment"). For reasons elaborated below, the Court rejects or substantially modifies the remaining sections. The Court finds, to the extent that the citizenship of the parties is correctly alleged, that it has diversity jurisdiction over this action.

Pursuant to 28 U.S.C. § 1915(e)(2), for the reasons below, the Court ultimately dismisses the following claims with prejudice:

- Count 1, in part: Plaintiff's breach of contract claims against Defendants Robinson, Smith, Brown, DCBWC and DCRA
- Count 2: Plaintiff's violation of fiduciary duty claims against Defendants Brown, DCBWC and DCRA
- Count 3, in part: Plaintiff's tortious interference with contract claims against Defendants GFS, Brown, DCBWC and DCRA
- Count 4: Plaintiff's unjust enrichment claims against Defendants Robinson, Smith, GFS, Brown, DCBWC and DCRA
- Count 5: Plaintiff's 42 U.S.C. § 1983 Fourteenth Amendment claims against Defendants Brown, DCBWC and DCRA
- Count 6: Plaintiff's negligence claims against Defendants Brown, DCBWC and DCRA

In addition, the Court dismisses the following claims without prejudice to Plaintiff filing a second amended complaint:

- Count 3, in part: Plaintiff's tortious interference with contract claims against Defendants Robinson and Smith.

Plaintiff's remaining claim is allowed to proceed:

- Count 1, in part: Plaintiff's breach of contract claim against Defendant GFS

## DISCUSSION

### I. The Court has subject matter jurisdiction on the basis of diversity.

As noted in the Magistrate Judge's Report, the Court is required to review its jurisdiction *sua sponte*. See Tilli v. Manorcare Health Servs., 419 Fed. App'x 152, 153 (3d Cir. 2011). Further, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Before reaching the merits of Plaintiff's claims and ruling on the sufficiency of Plaintiff's Amended Complaint under 28 U.S.C. § 1915(e)(2)(B), the Court must decide whether it has subject matter jurisdiction over this action. As elaborated below, the Court finds that it lacks federal question jurisdiction under 28 U.S.C. § 1331, but has diversity jurisdiction under § 1332(a).

#### a. *The Court lacks federal question jurisdiction.*

"A claim invoking federal-question jurisdiction . . . may be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.*, if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" Arbaugh v. Y&H Corp., 546 U.S. 500, 513 n.10 (2006) (quoting Bell v. Hood, 327 U.S. 678, 682–83 (1946)). As construed by the Magistrate Judge, Plaintiff invokes federal question jurisdiction by asserting two claims under the Constitution and laws of the United States: (1) a claim under 42 U.S.C. § 1983 for an alleged Fourteenth Amendment violation and (2) a claim under the Muhammed Ali Boxing Reform Act, 15 U.S.C. § 6301, *et seq*. At the jurisdictional stage, the Court must decide whether these claims are "wholly insubstantial and frivolous." Arbaugh, 546 U.S. at 513 n.10.

### i. *Plaintiff's § 1983 due process claim fails to meet the jurisdictional bar.*

In evaluating the sufficiency of a § 1983 claim, the first step is to "identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged deprivation of a constitutional right at all." Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (internal quotation marks omitted). Under the first step, the Court must choose how to construe Plaintiff's Fourteenth Amendment claim. As correctly construed in the Magistrate Judge's Report, Plaintiff's Amended Complaint states a procedural due process claim, for the reasons stated therein. For the claimed procedural due process violation, the threshold question is whether the property interest at issue is protected under the due process clause of the Fourteenth Amendment. This action arises entirely from a contract between private parties, a circumstance that rarely gives rise to a constitutionally protected property interest. See Finley v. City of Philadelphia, 2011 WL 3875371 at *4 (E.D. Pa. 2011) ("Plaintiffs cite no authority for the proposition that a private contract for the payment of money creates a property interest that is protected by the Fourteenth Amendment, and we are aware of none."). The one circumstance recognized by the Court of Appeals for the Third Circuit under which a private contract can give rise a constitutionally protected property interest occurs when an employment contract provides for termination only upon cause and state action provides the cause for termination. Wilson v. MVM, Inc., 475 F.3d 166, 178 (3d Cir. 2007).

Plaintiff's claim fails under the first step of the analysis. Plaintiff alleges that the contractual purse of $5,000 for his boxing match constitutes a protected property interest under the Fourteenth Amendment. In support of this contention, Plaintiff avers that D.C. regulations require a public commission, the D.C. Boxing and Wrestling Commission ("DCBWC"), to oversee a promoter's deposit of all purse amounts prior to each event in order to ensure that

contestants are properly paid. Amended Complaint (Doc. 3) at ¶¶ 19, 36–38, 64–67. These allegations do not suffice to assert a colorable Fourteenth Amendment property interest. The contract entered between Plaintiff and GFS is one between private parties, it is not an employment contract or sufficiently analogous agreement, and involves only a limited governmental role. To find a colorable claim of a valid constitutionally protected property interest in this context would improperly transform a private contractual dispute involving state-regulated entities into a federal constitutional dispute about the degree of governmental process owed to Plaintiff to effectuate GFS's obligations. Cf. Reich v. Beharry, 883 F.3d 239, 242 (3d Cir. 1989) ("a wholesale federalization of state public contract law seems far afield from the great purpose of the due process clause."). This claim is not colorable and cannot serve as a basis for subject matter jurisdiction. Therefore, this claim is dismissed with prejudice.

### ii. *Contrary to the Report, Plaintiff does not assert a Muhammed Ali Boxing Reform Act claim.*

Plaintiff asserts a negligence claim against Defendants Brown, the DCBWC and the DCRA in which he cites the Muhammed Ali Boxing Reform Act, 15 U.S.C. § 6301, *et seq.* (the "Act"), in order to establish that these Defendants have a special duty of care as to Plaintiff. Amended Complaint at ¶¶ 75–78; id. (citing 15 U.S.C. § 6301, Congressional Findings ("State officials are the proper regulators of professional boxing events, and must protect the welfare of professional boxers and serve the public interest by closely supervising boxing activity in their jurisdiction.")). Plaintiff strenuously objects to construing his Amended Complaint as asserting a violation of the Act. Objections to the Report and Recommendation (Doc. 30) at 3 ("[The] Muhammed Ali Boxing Reform Act[] was NOT a claimed violation. It was/is a reference to the 'findings of Congress", which supports the NEGLIGENCE claim."). Closely reading Plaintiff's Amended Complaint, and construing the complaint liberally in favor of Plaintiff, the Court finds

that Plaintiff does not assert, or attempt to assert, a claim under the Act. As a result, the Act cannot serve as a basis for subject matter jurisdiction and the Court need not address the merits of this claim.[2]

### b. *The Court has diversity jurisdiction.*

Federal district courts have original diversity jurisdiction over all civil actions between citizens of different states in which the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Plaintiff alleges that he is a citizen of Pennsylvania and that all Defendants are citizens of the District of Columbia or Maryland. Amended Complaint at ¶¶ 5–11. At this juncture, before Defendants have had an opportunity to answer, we take these allegations of citizenship as true and find that they state complete diversity of citizenship. Plaintiff also alleges that "the amount in controversy is greater than $75,000." Amended Complaint at ¶ 2.

---

[2] The Magistrate Judge construed Plaintiff's negligence claim as asserting a violation of the portion of the Act that provides:
> **Disclosures to the boxer**
> A promoter shall not be entitled to receive any compensation directly or indirectly in connection with a boxing match until it provides to the boxer it promotes--
> . . .
> (3) any reduction in a boxer's purse contrary to a previous agreement between the promoter and the boxer or a purse bid held for the event.

15 U.S.C. § 6307e(b). Read in context, the Act requires a promoter to disclose information to the boxer it promotes, including any reduction in the purse amount previously agreed upon, before the promoter receives any compensation for the match. The Act further provides a private right of action to enforce this provision: "Any boxer who suffers economic injury as a result of a violation of any provision of this chapter may bring an action in the appropriate Federal or State court and recover the damages suffered, court costs, and reasonable attorneys fees and expenses." Id. at § 6309(d). A violation of the Act giving rise to a boxer's private cause of action thus requires: (1) economic injury to the boxer (2) as a result of the violation. See Main Events Productions, L.L.C. v. Lacy, 358 F. Supp. 2d 391, 396 (D.N.J. 2004). In this case, a *prima facie* claim would have stated that Plaintiff suffered economic injury as a result of the promoter's failure to disclose a reduction in the contracted purse. Even if the Court were to construe Plaintiff's Amended Complaint as asserting a violation of the Act against his boxing promoter, Plaintiff's claimed violation would be wholly insubstantial and frivolous because, in essence, Plaintiff does not even attempt to assert injuries arising from a *failure to disclose*. Plaintiff's asserted injuries arise entirely from the cancellation of the bout.

While the sum claimed by Plaintiff generally controls, a federal court must examine Plaintiff's claims to determine whether, as a legal certainty, they fall below this threshold. Coulter v. Paul Laurence Dunbar Community Center, 685 Fed. App'x 161, 164 (3d Cir. 2017) (citing Auto-Owners Ins. Co. v. Stevens & Ricci, Inc., 835 F.3d 388, 395 (3d Cir. 2016)). In calculating the amount in controversy based on a Plaintiff's claims, a court "should not consider in its jurisdictional inquiry the legal sufficiency of those claims." Suber v. Chrysler Corp., 104 F.3d 578, 583 (3d Cir. 1997). "[T]he Rule 12(b)(6) standard plays no role in [the jurisdictional] inquiry." Coulter, 685 Fed. App'x at 164. Instead, the Court must examine each claim that is not "wholly insubstantial and frivolous" to determine whether it is "legally possible" that the value of Plaintiff's claims could exceed $75,000. Id. at 165. This determination requires the Court to examine "what damages [Plaintiff] could conceivably recover" under the relevant state law claims, even if these claims would not survive a motion to dismiss. Suber, 104 F.3d at 584. Thus, having found that Plaintiff's federal claim is wholly insubstantial and frivolous, we now turn to Plaintiff's state law claims to assess their legally possible value, assuming, as we must at this stage, that these claims are sufficiently stated.

As a matter of legal possibility, Plaintiff's claims clearly surpass the $75,000 jurisdictional amount in controversy requirement.

As stated in the Report, the typical measure of damages in a D.C. breach of contract action "is the amount necessary to place the non-breaching party in the same position he or she would have been in had the contract been performed." Rowan Heating-Air Conditioning-Sheet Metal, Inc. v. Williams, 580 A.2d 583, 585 (D.C. 1990). Consequential damages, including damage to reputation, are recoverable "if they 'could reasonably have been in contemplation of both parties when they made the contract,'" Klayman v. Judicial Watch, Inc., 2017 WL 2592413

at *5 (D.D.C. 2017) (quoting Phenix-Georgetown, Inc. v. Charles H. Tompkins Co., 477 A.2d 215, 225 (D.C. 1984)), and there is "reasonable certainty that the party suffered calculable loss," id. (quoting Sears, Roebuck & Co. v. Goudie, 290 A.2d 826, 833 (D.C. 1972)) (internal quotation marks omitted).

At a minimum then, Plaintiff's possible contractual damages include the amounts to which he would have been entitled had the contract been performed: $5,000, plus $350 for travel, the payment of his "medicals," and "3 per diem and 2 hotel." Bout Contract Between Promoter and Boxer (Doc. 3-1). Possible damages further include any consequential damages that could be proven with reasonable certainty and were in contemplation of both parties at the time the contract was executed. For example, Plaintiff's alleged loss of future revenue caused by the cancellation of the bout would be a legally possible basis for recovering consequential damages. See Amended Complaint at 20 (alleging "loss of job performance and job training, and the related loss of future earnings power and potential"). At the jurisdictional stage, it cannot be said to a legal certainty that these contractual damages aggregate to less than $75,001.

Having demonstrated that it is legally possible for Plaintiff's contractual damages to exceed $75,000, the Court need not further analyze recoverable damages in Plaintiff's state claims. The Court finds that it has subject matter jurisdiction on the basis of diversity at this stage of the proceedings.

## II.   Other than Plaintiff's breach of contract claim against Defendant GFS, Plaintiff's claims are dismissed *sua sponte.*

After granting IFP status, the Court must review the sufficiency of Plaintiff's claims and dismiss a claim *sua sponte* if the complaint fails to state a claim upon which relief may be granted or the complaint seeks money damages from a defendant who is immune from suit. 28 U.S.C. § 1915(e)(2)(B). For purposes of this review, we must construe the Amended Complaint

liberally in favor of Plaintiff, United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992), and then apply the standard for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Powell v. Hoover, 956 F. Supp. 565, 568 (M.D. Pa. 1997). We now address each of Plaintiff's claims in turn under this standard.

    ***a.    Plaintiff's breach of contract claims against Defendants Brown, DCBWC and DCRA are dismissed with prejudice.***

The Court agrees with, and adopts, Section II.c.iv of the Report. To summarize, Plaintiff's breach of contract claims must be dismissed against Defendants who are not parties to the contract and are hereby dismissed with prejudice. Plaintiff's breach of contract claim against Defendant GFS, the only other party to the contract, is sufficiently stated to withstand a motion to dismiss.

    ***b.    Plaintiff's breach of fiduciary duty claims against Defendants Brown, DCBWC and DCRA are dismissed with prejudice.***

Plaintiff alleges that Defendants Commissioner Brown, DCBWC and DCRA breached a fiduciary duty owed to him either by wrongfully failing to ensure the promoter's deposit of the purse amount or by wrongfully transferring a purse amount deposited with the DCBWC to GFS. Amended Complaint at ¶¶ 29, 35–38. As Defendants for this IFP claim are a DC public employee acting in his official capacity and two DC agencies, the Court must assess whether this claim "seeks money damages from a defendant who is immune from suit." 28 U.S.C. § 1915(e)(2)(B). The Court concludes that it does. Each of the Defendants on this claim are immune from a suit for monetary damages.

The Eleventh Amendment to the Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." This constraint on

federal judicial power applies to DC as if it were a state. See Bailey v. Washington Metro. Area Transit Auth., 696 F. Supp. 2d 68, 71 (D.D.C. 2010). Further, "[t]he Eleventh Amendment to the Constitution bars suits by private parties against a state agency, absent a valid abrogation of immunity by Congress or waiver of immunity by the state or state agency." Sharma v. Washington Metro. Area Transit Auth., 58 F. Supp. 3d 59, 66 (D.D.C. 2014) (citing Alden v. Maine, 527 U.S. 706, 728, 755–56 (1999)). Thus, without DC's consent, there can be no federal jurisdiction to hear a private claim against DC brought by a citizen of Pennsylvania. See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 72 (1996) ("the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting states"); Principality of Monaco v. Mississippi, 292 U.S. 313, 329 (1934) ("To suits against a State, without her consent, brought by citizens of another State . . . the Eleventh Amendment erected an absolute bar.").

Reviewing the statutes that establish the DCBWC and DCRA as well as case law on the scope of DC's immunity from suit, the Court finds that DC has not waived immunity as to these agencies.[3] As a result, these agencies are immune from suit and the breach of fiduciary duty claims against them are dismissed with prejudice.

As to Commission members, DC explicitly extends immunity from suit for monetary actions against individual Commission members for "any action of the Commission performed in good faith." D.C. Code § 3-609. Defendant Brown, however, in his capacity as Commission

---

[3] In addition, the Court notes that any waiver of immunity would be restricted by DC's statutory notice requirement, which states that "an action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage." D.C. Code § 12-309(a).

Administrator, is not a member of the Commission.  See D.C. Code § 3-604(a) (the Commission consists of 3 members nominated by the Mayor); DC Boxing and Wrestling Commission, https://www.open-dc.gov/meeting/dc-boxing-and-wrestling-commission-16 (last visited Nov. 8, 2017) (listing the three Commissioners and the Commission Administrator as separate positions).

For DC employees facing common law tort claims, "a District officer . . . [is] protected by sovereign immunity if the officer's acts are discretionary, but subject to liability if the acts were ministerial in character."  Tucci v. District of Columbia, 956 A.2d 684, 697 (D.C. 2008) (quoting Powell v. District of Columbia, 602 A.2d 1123, 1126 (D.C. 1992)).

There is a two-part test to determine whether such acts are discretionary and thus immune: (1) whether any "statute, regulation, or policy specifically prescribes a course of action for an employee to follow" and (2) "if no course of action is prescribed . . . whether the exercise of discretion is grounded in social, economic, or political goals," in which case the activity is immune."  Beebe v. Washington Metro. Area Transit Auth., 129 F.3d 1283, 1287 (D.C. Cir. 1997) (internal citations and quotation marks omitted).  Under the first prong, the relevant statutes and regulations do not specify the Commission Administrator's responsibilities, or prescribe a course of action, concerning the oversight and distribution of deposited funds for boxing matches.  The Court thus proceeds to the second prong.  Under the second prong, the Court must examine the scope of the grant of discretion and its underlying grounds; a broad grant of discretion resting on state policy considerations signals immunity.  See id.  To the extent that Defendant Brown had any role in Plaintiff's failure to receive his contractual purse, Defendant Brown was partaking in discretionary authority granted to the DCBWC for the purpose of overseeing and regulating boxing activities in DC.  See D.C. Code § 3-601.  The powers granted to the Commission under its authorizing statute are broad, and include the power to "make,

amend, carry out, and enforce such rules as it deems necessary for and likely to be effective in governing the events and procedures within its jurisdiction as well as all participants in such events and procedures." D.C. Code § 3-606(a). The factors that come into play in exercising this authority are policy considerations related to the best way to safely, fairly, and efficiently conduct boxing and wrestling matches—for example, such considerations necessarily include "budgetary constraints, public perception, [and] economic conditions." Beebe, 129 F.3d at 1287 (internal citations omitted). For these reasons, the Court finds that Defendant Brown is immune from a suit for monetary damages. Accordingly, the Court lacks jurisdiction over Plaintiff's claim against Defendant Brown and this claim is dismissed with prejudice.

> c. *Plaintiff's tortious interference with contract claims against Defendants GFS, Brown, DCBWC and DCRA are dismissed with prejudice; Plaintiff's tortious interference claims against Defendants Smith and Robinson are dismissed without prejudice to Plaintiff filing a second amended complaint.*

Applying DC law, a party to a contract cannot be liable for its own tortious interference with that contract. Farouki v. Petra Int'l Banking Corp., 811 F. Supp. 2d 388, 404 (D.D.C. 2011), vacated in part on other grounds, 705 F.3d 515 (D.C. Cir. 2013) ("the tort does not lie when the defendant himself is a party to the contract"). And, agents of a company that is a party, such as company officers, while acting within the scope of their authority and consistent with the company's interests, cannot be liable for tortious interference. See id. In this inquiry, the agent's subjective motivation is irrelevant. Curaflex Health Servs., Inc. v. Bruni, 899 F. Supp. 689, 696 (D.D.C. 1995).

Because GFS is a party to the contract with Plaintiff, GFS cannot be liable for tortious interference. Plaintiff's tortious interference claim against GFS must be dismissed with prejudice.

As to Defendants Robinson, President of GFS, and Smith, a GFS Promoter, there are no facts that establish they acted outside the scope of their authority or against the interests of GFS. To the contrary, Plaintiff explains that these Defendants' actions rest on the supposition that "there was not enough money to pay the fighters," Amended Complaint at ¶ 32, which would imply that Robinson and Smith acted pursuant to GFS's interests in failing to make payment. Neither does Plaintiff allege that Robinson or Smith took any action other than through their authorized responsibilities at GFS. As a result, Plaintiff's tortious interference claims against GFS agents Robinson and Smith must be dismissed under the 12(b)(6) standard for failure to state a claim.

If Plaintiff wishes to file a second amended complaint containing additional facts that establish tortious interference with contract by Defendants Robinson and Smith, Plaintiff may do so. In addition to the facts currently alleged, such a complaint must contain facts that demonstrate these Defendants acted outside the scope of their authority at GFS and acted contrary to the interests of GFS. The second amended complaint must also contain factual allegations showing that these actions were intended to cause, and did cause, the contract's breach. See Cooke v. Griffiths–Garcia Corp., 612 A.2d 1251, 1256 (D.C. 1992). As Plaintiff has already been granted leave to file a first amended complaint, Plaintiff is hereby notified that this is Plaintiff's last chance to file an amended complaint for tortious interference with contract against Defendants Robinson and Smith. Such a complaint shall be filed no later than **December 18, 2017**. If no amended complaint is filed by that date, the Court will assume that no such filing is forthcoming and will dismiss Plaintiff's tortious interference claims against Defendants Robinson and Smith with prejudice.

Plaintiff's tortious interference claims against Defendants Brown, DCBWC and DCRA are foreclosed for the same reasons as Plaintiff's breach of fiduciary claim. Namely, the Court lacks jurisdiction over these claims absent a waiver of immunity from D.C., and no such waiver exists.

### d. Plaintiff's unjust enrichment claims against Defendants Robinson, Smith, GFS, Brown, DCBWC and DCRA are dismissed with prejudice.

The Court adopts Section II.c.vii of the Report concerning Plaintiff's unjust enrichment claims, supplemented by the additional finding that Defendants Brown, DCBWC and DCRA are immune from suit for the reasons stated above. Accordingly, Plaintiff's unjust enrichment claims are hereby dismissed with prejudice.

IT IS SO ORDERED.


November 28, 2017                                          s/Cathy Bissoon
                                                           Cathy Bissoon
                                                           United States District Judge


cc:

RAYCO SAUNDERS
10214 Frankstown Rd
Pittsburgh, PA 15235

DC Boxing and Wrestling Commission C/O Adam Weers
1100 4th Street, SW
Washington, DC 20024

Sheldon J. Brown
DC Boxing and Wrestling Commission
1100 4th Street, SW
Washington, DC 20024

Department of Consumer and Regulatory Affairs C/O Melinda Bolling
110 4th Street SW
Washington, DC 20024

Darryl Robinson
2323 Shadyside Avenue
Suitland, MD 20746